Mr. Justice Walker delivered the opinion of the Court. The construction to be given to the 13th section of the charter of the Real Estate Bank, was determined by this court in the case of Wilson vs. Biscoe et al., at the present term. That decision will be considered as expressive of our opinion touching the same points raised in this case, leaving to be determined another question which arises out of the peculiar facts at issue in this case. The notes which defendant Tucker executed to the Bank, and for the payment of which the lands mortgaged to the Bank are sought to be sold, were discounted on personal security, and were never, by renewal or substitution or by the execution of the stock notes or bonds, converted into stock loans under the 17th section of the charter, to be secured by mortgage under the 13th section. From the history of the case, as disclosed by the record, it appears that Tucker subscribed for 50 shares of stock in the Real Estate Bank, and executed a mortgage and bond in the usual form, but had not perfected his title to the land subscribed and mortgaged. Such being the case also with several other stockholders, by resolution of the Directory, they were allowed to borrow upon personal security, with the privilege of substituting stock notes after they had perfected title to their lands. Long after the notes of Tucker upon personal security were discounted, he did perfect the title to his stock lands; upon which the Directory ordered that his stock account be opened, with the privilege of substituting stock notes in the place of the old notes upon personal security. It appears that he did execute a new note, and that he left it with the officers of the bank. The note, however, was in blank, and the clerk of the bank directed to ascertain, by calculation, how much Tucker owed the bank, and should pay before he could, under the orders of the Directory, avail himself of the privilege of making such substition. This calculation the clerk made, and ascertained that the sum of $333 were due and payable in order to entitle him to the privilege of substitution. This money Tucker never paid, nor did he take up his old notes; and although he voted as a stockholder, no certificate of stock was ever awarded to him. Upon these facts in issue, the circuit court decreed that the bill be dismissed for want of equity. The only question is, was this a stock loan? If so, the payment of it was secured by mortgage : if not, the mortgage property is not bound for the payment of these debts, and the decision of the circuit court is correct. We have already decided that the 13th and 17th sections of the charter contemplate loans to stockholders to be secured by the mortgages given under the 13th section. We are not prepared to say, however, in view of the powers conferred upon.the directory that they might not take additional security. But whether this power did or did not exist, there can be no doubt but that they had power to loan on personal security, and that a stockholder, as well as any other person, might, if he chose to do so, borrow on personal security alone. Such loan upon stock security was a privilege conferred by the charter upon the stockholder to be used or rejected at his option. In this instance, the discounts were made, at least in part, on personal security. The stock notes were never completed, nor were the old notes taken up. At this point the question turns upon the intention of the parties at the time the notes were executed, as to whether the personal security was intended to be independent sufficient security, without reference to the mortgages, or was it intended to be cumulative, giving additional security on account of the uncertain condition of the title to the stock lands. In view of the whole transaction we think the latter the true intent of the parties. The bank never intended to deprive herself of such security as the mortgaged lands might furnish, but simply to guard against loss by reason of the imperfect title to the lands at the time. The resolutions of the board and all the subsequent acts of the bank and Tucker prove this. Tucker did perfect his stock and had a right to avail himself of the provisions of the charter by complying with the by-laws and rules of the bank. This he failed to do, and by that failure left his old notes in precisely the condition they would have been in had no attempt been made to perfect the title to his stock lands. The fact that he had not received a certificate of stock did not make him the less a stockholder. He acquired his rights as such by the substantive acts of subscribing for stock and complying with the requisitions of the incorporation in perfecting it. In view of the whole case we are of opinion that the loan to Tucker was made as well on the security furnished by the mortgage to the bank as on personal security; and the bank might not, under the circumstances, and probably would not have discounted the note upon personal security alone, leaving out of view his rights and privileges as a stockholder and the additional security afforded by the mortgage- The decision of the Jefferson circuit court decreeing that the complainant’s bill be dismissed, we think erroneous and ought to be reversed. Let the decree be reversed and the cause be remanded to be proceeded in according to the equity of the case and not inconsistent with this opinion.